IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LALANGIE HOSKINS**                                                                     **PLAINTIFF**

v.                                                                                         **NO: 3:17-CV-224-M**

**GE AVIATION**                                                                                        **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the Court on Defendant GE Aviation's *Motion for Summary Judgment on All Claims in Consolidated Cases* [Doc. #76]. Plaintiff Lalangie Hoskins filed her response in opposition [Doc. #78], to which GE Aviation filed its reply [Doc. #80]. The Court, having considered the memoranda and submissions of the parties, along with relevant case law and evidence, is now prepared to rule.

### I.  Factual Background

GE Aviation produces jet engines and other components for commercial and military aircrafts. According to the facts as set out by Defendant in its present motion, the Declaration of Angel Contreras (attached as an exhibit to Defendant's motion), and other exhibits attached to Defendant's motion, GE Aviation's Batesville facility has a workplace harassment policy in place and a Composite Operations Site Handbook as well as an integrity program called The Spirt & The Letter. All GE Aviation employees are expected to follow the policies and, if concerns arise or if a potential violation has occurred, the employee is expected to raise such concerns as promptly as possible.

On August 23, 2013, Plaintiff was hired by GE Aviation to work as a Production Associate in its Batesville, Mississippi facility. During her employee orientation, Plaintiff received a copy of the Batesville Site Handbook and later received an updated version in March of 2016.

According to the only set of facts provided to this Court, mostly identical to the Declaration of Angel Contreras, and the attached exhibits to the Defendant's motion, the Batesville facility followed the GE Aviation policy—available to all employees—which required full compliance with the Americans with Disability Act. As per GE Aviation's Accommodations Procedure for Individuals with Disabilities, company representatives are to engage in "interactive dialogue" when a job seeker requests an accommodation in order to "determine whether a reasonable accommodation is appropriate and can be implemented." Ultimately, the entire process, as per GE Aviation procedures, may include and require "submission of medical documentation completed by the treating physician, or other information on a case-by-case basis." Additionally, per the Batesville Site Handbook, any employee who fails to cover his or her absences with either a benefit program such as the FMLA or the ADA, or simply fails to have their absence otherwise excused, is considered to have acquired an unexcused absence. GE Aviation policy considers absences excessive if:

a. An employee misses in excess of 8 hours unexcused in a 90-day period; or

b. An employee misses in excess of 32 hours unexcused in a 365-day period.

On June 19, 2014, after receiving a Coaching Discussion—"the first level of the progressive discipline process"—for taking excessive breaks, Lalangie asserted that she had been sexually harassed by a coworker. She did not file a Charge of Discrimination for this alleged incident.

On April 13, 2016, Lalangie filed her first EEOC Charge of Discrimination alleging discrimination based on sex and retaliation for the time period between August 1, 2014 to April 13, 2016. An investigation was conducted. GE's investigation found that Lalangie's claims were either unsubstantiated or unconfirmed.

GE Aviation, upon Plaintiff's request, granted her intermittent FMLA leave from May 13, 2016 to August 31, 2016 in order to allow her opportunities to leave work early. However, to leave early and be covered under FMLA, Plaintiff was required to provide notice of when she was leaving early. During this time, Plaintiff received disciplinary warnings for failing to provide notice of her late arrivals or early departures.

Plaintiff was later granted more intermittent FMLA leave, this time from September 1, 2016 to February 28, 2017. However, on November 4, 2016, Plaintiff was admitted to the hospital for a period of three days, and then stopped showing up to work. However, Plaintiff was, nonetheless, granted FMLA leave from November 5, 2016 to January 11, 2017.

As the end of her FMLA leave grew close, Plaintiff reached out to HR representatives to inquire about an extension of coverage under the ADA. HR Representatives explained to Plaintiff what steps needed to be taken to acquire coverage under the ADA. One of these steps was obtaining proper medical documentation and submitting completed documents to the company.

On January 11, 2017, Plaintiff's primary care physician submitted the forms to GE Aviation. After review of the forms, HR Representatives determined that the forms were unclear and incomplete. Seeking clarification of the basis for the leave and the duration of her disability, GE Aviation requested additional information by sending a letter to Plaintiff's physician. Her physician responded on January 13, 2017 by suggesting that Plaintiff's psychiatrist would be better equipped to complete the requested documentation. GE Aviation then requested that Plaintiff have her psychiatrist fill out the documentation and explain the basis for the leave and the duration of her inability to work. Plaintiff was given a deadline of January 27, 2017.

Stating that she would see her psychiatrist on February 2, 2017 and could have him complete the paper work then, GE Aviation extended her deadline. On February 2, 2017, Plaintiff

emailed HR and explained that her psychiatrist refused to complete the ADA forms because "it hasn't been 6 months" of treatment and that he could complete the forms "when he treats me for at least 3-6 months." Plaintiff's email further stated that "the first form was correctly filled out so it's valid until my psychiatrist treats me further." In his response, HR Manager Angel Contreras responded that the first form was "incomplete or needed clarification" because "we did not know whether you were completely unable to work or [if] your ability to work was simply limited, the form did not specify what restrictions you were under if you could work, it did not state what medically supported accommodations you would need, and it did not specify the medical reasons for any restriction or inability to work." In his response email, Angel granted Plaintiff until 5 p.m. on February 10, 2017 to submit the required information.

About one hour later, Plaintiff responded to Angel and stated that she would be using the first form "since it has been reviewed and is sufficient" and no other accommodation was requested "other than the 2-3 month time off." On February 6, 2017, Angel emailed Plaintiff specifying that her deadline to provide the company with the completed form was February 10, 2017. This time, Plaintiff responded that her psychiatrist would "fill them out April 3, 2017" and that there was no way for him to fill them out sooner, so she was requesting "TIME" and sending her first "sufficient ADA document back" to the company.

On March 9, 2017, Angel sent a letter to Plaintiff terminating her employment and explaining the reasons for her termination. Among the reasons listed in the letter is the fact that as of March 9, 2017 Plaintiff had still not submitted any of the requested documentation (other than her first insufficient form). Her failure to provide GE Aviation with properly completed forms resulted in her absences being unexcused. Over a period of 365 days, Plaintiff acquired 298.88 hours of unexcused absences, 296 of which were acquired within a 90-day period.

## II.     Procedural Background

On November 09, 2017, Lalangie filed her complaint in this case, Case No. 3:17-cv-00224, *pro se*, against Eugene Droder, III, Angel Contreras, and GE Aviation alleging claims of employment discrimination under Title VII of the Civil Rights Act of 1964. Then, on April 27, 2018, Plaintiff filed another complaint, Case No. 3:18-cv-00099, this time asserting claims under the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964.

Finding that the two cases contained similar factual circumstances against the same defendants, and that both cases would involve the same discovery and witnesses, the two cases were consolidated by the United States Magistrate Judge on May 21, 2018. [Doc. #33].

On November 5, 2018, this Court granted Eugene Droder and Angel Contreras' separate *Motions to Dismiss* and dismissed the claims asserted against them. [Doc. #63]. As of November 5, 2018, GE Aviation is the only remaining defendant in this case.

GE Aviation filed the present motion on December 21, 2018.

## III.     Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000). Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts

showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Applying this standard, the Court finds that summary judgment should be granted.

### IV. Discussion

**a. Plaintiff's claims based on alleged unlawful conduct that occurred prior to October 15, 2016 are dismissed for failure to meet the 180-day deadline.**

Plaintiff raises various claims in this case, and it seems clear that a few of her ADA discrimination and retaliation claims are due to be dismissed for failure to exhaust administrative remedies. Before a plaintiff may file a Title VII or ADA claim in federal court, she must first exhaust her administrative remedies. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (noting that the ADA incorporates by reference Title VII's administrative procedures). In Mississippi, plaintiffs must file a charge of discrimination with the EEOC within 180 days of "the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1).

In this case, Plaintiff filed her first EEOC Charge of Discrimination on April 13, 2016 alleging discrimination based on retaliation and sex and listing the earliest date of discrimination as August 1, 2014 and the latest date of discrimination as April 13, 2016. Following the 180 days deadline, Plaintiff's EEOC Charge of Discrimination covers any discrimination based on alleged unlawful conduct that occurred after October 15, 2015—180 days before April 13, 2016. Therefore, claims based on alleged unlawful conduct that occurred on or before October 15, 2016 are, hereby, dismissed because of Plaintiff's failure to timely submit an EEOC charge.

6

**b. Claims asserted by Plaintiff that allegedly occurred between July 19, 2016 and January 11, 2017 are barred.**

On July 19, 2016, Plaintiff filed an amended charge with the EEOC, this time alleging discrimination based on retaliation and sex and alleging the events of discrimination occurred between April 8, 2014 to July 19, 2016 and stating April 21, 2016 as a date of one incident. Then, on February 21, 2017, Plaintiff filed a second charge listing discrimination based on race, retaliation, disability, and gender, for conduct that allegedly occurred between January 11, 2017 and February 21, 2017.

Defendant seeks that the Court dismiss any claims that arise out of conduct or events between July 19, 2016 and January 11, 2017. Defendant argues that any event or conduct which may have occurred during this time is not the subject of either of Plaintiff's charges of discrimination and is conduct that was never before the EEOC. The Court agrees.

To determine the scope of the lawsuit the courts construe the EEOC charge broadly and ask whether the claim "can reasonably be expected to grow out the charge of discrimination." *See Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162 (5th Cir. 2018); *Crawford v. Harris County Juvenile Probation Dept.*, 31 Fed.Appx. 159, *4; *Adams v. Stanley Sec. Solutions, Inc.*, 2007 WL 2979867, at *5 (N.D. Tex. Oct. 11, 2007); *Belmear v. Mary Kay Inc.*, 2000 WL 127282, at *3 (N.D. Tex. Feb. 3, 2000).

Here, Plaintiff's EEOC charges do not cover, or list conduct and events that occurred between July 19, 2016 and January 11,2017. Any claims brought by Plaintiff based on conduct that occurred between July 19, 2016 and January 11, 2017—dates that are not covered in the charges—are barred.

### c. Summary judgment should be granted on Plaintiff's claims for disparate treatment based on gender and race.

Under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden-shifting framework, a plaintiff may make a *prima facie* case of discrimination by demonstrating (1) that she belongs to a protected group; (2) she was qualified for the position held; (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995). Assuming she does so, the employer must rebut a presumption of discrimination and articulate legitimate, nondiscriminatory reasons for the adverse employment action. *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). The plaintiff must then "prove that (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative). *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 519 (5th Cir. 2010).

Defendant argues, and the court agrees, that Plaintiff's claims fail because she failed to meet the fourth element of her *prima facie* case and also failed to rebut defendant's stated non-discriminatory reason for her termination. Indeed, the court finds that plaintiff has failed to produce any evidence, either direct or circumstantial, that she was terminated based on her race or her gender. In so concluding, the court notes that Plaintiff's response to the motion for summary judgment is merely an attempt to explain the ADA and who it protects and contains no proof whatsoever that might establish genuine fact issues regarding race or gender discrimination. Plaintiff merely states that "she can prove there is a genuine issue of material fact and the case must go to trial," but that is as far as she goes—at no point did she provide this Court any evidence to in fact show that genuine issues of material fact exist. The court, therefore, concludes that

Plaintiff's claims of race and gender discrimination fail for lack of proof, and Defendant's motion for summary judgment is to be granted as to these claims.

   **d. Summary judgment should be granted as to Defendant on Plaintiff's claim of sexual harassment.**

To establish a prima facie case of a sexually hostile work environment under Title VII, the Plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005). To determine whether the alleged harassment affected a term, condition, or privilege of her employment, a plaintiff must show that the conduct was "severe or pervasive." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).

Defendant has presently moved for summary judgment, arguing that this claim fails for two reasons: (1) that the conduct alleged was not sufficiently severe or pervasive so as to constitute a hostile work environment; and (2) that there is no basis to conclude that GE Aviation knew or should have known of the harassment and failed to take remedial actions. In seeking summary judgment, Defendant only appears to dispute that plaintiff cannot establish the fourth or fifth element of her prima facie case.

Here, in responding to Defendant's arguments that the alleged harassment in this case was insufficiently severe, Plaintiff provided a list of general items that often contribute to a hostile environment. As to her situation specifically, Plaintiff merely states that she has "witness Latricia Holland to read aloud her 3-page EEOC statement during trial to verify her claims of harassment" and that she would "like to have her audio of Latricia Holland heard by the Court verifying the Plaintiff's claims of being grabbed in the buttocks." Other than these two statements of potential

witnesses and possible testimony, the plaintiff has not provided this Court with facts to help establish that GE Aviation in fact promoted a hostile working environment. Per the Court's own review of the record, the conduct that allegedly subjected Plaintiff to a hostile work environment appears to be: (1) an incident in 2014 where a co-worker allegedly slapped Plaintiff on her buttocks; (2) an incident in 2014 where a co-worker allegedly called Plaintiff a "whore"; and (3) an incident in 2016 where a separate co-worker allegedly also slapped her on the buttocks.

The Court finds that while the conduct in this case, if true, may be offensive, it ultimately does not rise to the level of severity or pervasiveness so as to impose Title VII liability on GE Aviation. "A recurring point in [Supreme Court] opinions is that 'simple teasing' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 160 F.3d 871, 874 (5th Cir. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Here, the alleged conduct, although reprehensible, was infrequent and occurred roughly two to three times over a two-year period. Such isolated instances are not so severe or pervasive to create a hostile work environment. Summary judgment is granted as to this claim.

  e. **Summary judgment should be granted as to Defendant on Plaintiff's retaliation claim.**

Title VII prohibits discrimination against an employee on the ground that "[s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The ADA similarly provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. The Fifth Circuit "applies the same analysis to ADA and Title VII retaliation claims," as well as to 42 U.S.C. § 1981 claims. *Stringer v. Mound Bayou Public School District,* 2016 WL 183701, *13 (N.D. Miss. Jan. 14, 2016), (citing *Grubic v. City of Waco*, 262 Fed. Appx. 665, 666 n.6 (5th Cir. 2008)).

To prevail on her retaliation claim, Plaintiff must first establish a prima facie case. "In order to make a prima facie case, a plaintiff must show '(1) [s]he participated in an activity protected by Title VII [or the ADA]; (2) h[er] employer took an adverse employment action against h[er]; and (3) a causal connection exists between the protected activity and the adverse employment action." *Stringer*, *13 (*citing McCoy v. City of Shreveport*, 492 F.3d 551, 557); *see also Brandon v. Sage Corp.,* 808 F.3d 266, 270 (5th Cir. 2015). If the plaintiff makes a prima facie case, the burden then shifts to the employer to proffer a legitimate rationale for the underlying employment action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). If such a reason is provided, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason. *Id.* The plaintiff at all times retains the ultimate burden to prove that intentional retaliation was the "but for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened motivating factor causation test); *Seamn v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999) ("But-for" standard also applies in ADA retaliation cases.)

In this case, there is no dispute that filing an EEOC charge is in fact protected activity. However, Defendant seeks summary judgment on Plaintiff's retaliation claims because of

Plaintiff's lack of proof that there was a causal connection between the EEOC filing and investigations and her subsequent termination.

The Court agrees that summary judgment should be granted as to this claim. Based on review on the parties' submissions, the Court is of the opinion that Plaintiff's termination was not a result of her engaging in protected activity—filing an EEOC charge—but rather was a result of Plaintiff's failure to follow company policy and her excessive unexcused absences. The record establishes that on various occasions Plaintiff was either late to work or left early without permission—record evidence depicts the following: May 24, 2016 – Plaintiff left two minutes early and those two minutes were not covered by FMLA or ADA; June 7, 2016 – Plaintiff clocked in fifty-seven (57) minutes late to her shift and these minutes were not covered by FMLA or ADA; June 14, 2016 – Plaintiff was again fifty-seven (57) minutes late to her shift and none of these minutes were covered by FMLA or ADA; July 29, 2016 – Plaintiff was again fifty-seven (57) minutes late and not covered by FMLA or ADA; August 10, 2016 – again, fifty-seven (57) minutes late and not covered by FMLA or ADA; August 15, 2016 – Plaintiff left forty-five (45) minutes early without permission or prior approval and these, too, were not covered by FMLA or ADA. Thus, based on this evidence, and the fact that Plaintiff fails to provide any evidence to suggest otherwise, the Court finds that Plaintiff's August 2016 write-up was for no reason other than her consistent clocking in late and checking out early.

Additionally, the record also establishes that Plaintiff was ultimately terminated for her failure to provide adequate, and required, documentation for the company to successfully provide accommodations or further work with her needs. Plaintiff was terminated on March 9, 2017. According to the record, prior to this date, Plaintiff had exhausted her FMLA leave on January 11, 2017 but did not return to work. Before her FMLA expired, it appears that an HR representative

informed the plaintiff what procedures should be taken to secure an extended leave under the ADA. Over the next few weeks, Plaintiff failed to submit proper medical documentation to GE Aviation and sought various deadline extensions—GE Aviation granted approximately two, extending her deadline to February 10. When Plaintiff, on February 8, yet again requested another extension—this time until April 15, 2017, Defendant declined to agree. Defendant argues that it was Plaintiff's absence from work for eight weeks and her continued failure to provide adequate medical documentation that caused her termination.

Again, Plaintiff in her response does not provide this Court with any evidence to establish that Defendant's reasons for termination were mere pretexts. Therefore, it is the Court's opinion that summary judgment should be granted on Plaintiff's retaliation claims.

**f. Summary judgment should be granted on Plaintiff's disability discrimination claims**

This Court finds that summary judgment should also be granted as to Plaintiff's disability discrimination claims because (1) there is no genuine issue of material fact to show that GE Aviation failed to reasonably accommodate Plaintiff; (2) there is no genuine issue of material fact that establishes that GE Aviation terminated Plaintiff because of a disability; and (3) there is no genuine issue of material fact that GE Aviation somehow interfered with her FMLA Leave.

**a. Reasonable Accommodation of Plaintiff**

The ADA prohibits any covered employer from "discriminat[ing] against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). In order to prevail on a failure to accommodate claim, the plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir.

2013). "'An employee who needs an accommodation . . . has the responsibility of informing her employer.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476 (5th Cir. 2016) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)). "Once an accommodation is requested, an employer must engage in the 'interactive process,' or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation. *Id.* "An employer that fails to engage in the interactive process in good faith violates the ADA" *Id. (*citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)). However, if the breakdown in the interactive process is "traceable to the employee," there is no violation on the employer's part. *Id*. (citing *Griffin*, 661 F.3d at 224).

In the present case, GE Aviation focuses primarily on the third element, whether it failed to make reasonable accommodations for the plaintiff. GE Aviation argues that it did not fail to make a reasonable accommodation because: the accommodation Plaintiff sought was an indefinite leave of absence and she provided them with no indication of when she would be able to return to work; and because Plaintiff caused the breakdown in the interactive process by failing to submit the requested documentation from her medical providers. As stated before, Plaintiff in her response provides this Court with hardly any evidence to help show otherwise.

The EEOC provides that "'[a]n employer may require an employee to provide documentation . . . sufficient to substantiate' the limitation that allegedly requires an accommodation." *Delaval*, 824 F.3d at 482 (citing U.S. EQUAL EMPLOYMENTT OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (2000), 2000 WL 33407181, at *10). "Where an employee refuses to provide such documentation, [the Fifth Circuit] has held that [s]he causes a

14

breakdown in the interactive process that may preclude an employer's liability." *Id*. (citing *Griffin*, 661 F.3d at 225).

Here, the record evidence establishes that HR representatives of GE Aviation reached out to the Plaintiff in various attempts to help ensure that her absences would be covered. As previously stated, Plaintiff failed to submit proper medical documentation to HR Representatives on numerous occasions and sought various deadline extensions—which GE Aviation granted by extending her deadline to February 10. On February 8, Plaintiff requested another extension—this time until April 15, 2017—ultimately seeking to be absent from work for approximately eight more weeks without submitting any paperwork to her employer. The Court finds that Plaintiff caused a breakdown in the interactive process with GE aviation. Defendants are entitled to summary judgment on this claim.

### b. Discharge of Plaintiff based on Disability

To the extent that Plaintiff tries to raise a claim that she was discharged because of a disability, the Court grants summary judgment to the defendant on these claims. In claims of discharge based on a disability the same *McDonnell Douglas* burden-shifting framework, discussed above, applies. A plaintiff may make a *prima facie* case of discrimination based on a disability by proving: "(1) [s]he had a disability, (2) [s]he was qualified for the job, and (3) there was a causal connection between an adverse employment action and [her] disability." *Rodriquez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). Again, the employer must then provide a legitimate business reason for the adverse action to which the burden then shifts to the plaintiff to rebut the nondiscriminatory reason by establishing it as a pretext or showing that her disability was a motivating factor for the adverse action. *See above Section IV(c)*.

Here, plaintiff fails to produce any evidence, either direct or circumstantial, that she was terminated because of an alleged disability. The Court does not find evidence of pretext in GE Aviation's discharge of the Plaintiff for her failure to follow company policy, provide HR Representatives with requisite medical documentation, and extended unexcused absences. Thus, the Court finds that summary judgment is warranted on Plaintiff's claims that she was discharged because of an alleged disability.

### c. Interference with Plaintiff's FMLA benefits

In its motion, GE Aviation asks this court to grant summary judgment as to FMLA interference claims that "Plaintiff may try to assert." Although Plaintiff has not asserted such claims yet, this Court nonetheless, finds that to the extent Plaintiff at any point tries to assert such claims, summary judgment is granted as to these claims as well.

"For an employee to establish a prima facie FMLA interference claim, the employee 'must show: (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA.'" *DeVoss v. Southwest Airlines Co.*, 903 F.3d 487 (5th Cir. 2018) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)).

Here, the evidence clearly establishes that GE Aviation did not deny Plaintiff any FMLA benefits. GE Aviation granted her FMLA leave—which she exhausted in January 2017. As a matter of law, if Plaintiff at any points raises such claims, they fail as a matter of law.

## V. Conclusion

For the reasons discussed above, the Court finds that Defendant GE Aviation's *Motion for Summary Judgment* [Doc. #76] should be **GRANTED**. A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 25th day of March, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**